## WILCOXEN vs. REYNOLDS.

[ACTION ON PROMISSORY NOTE.]

1. *Promissory note; what prima facie not dischargeable in Confederate currency.*—A promissory note made in this State on 31st October, 1863, for a certain number of "dollars," and payable January 1st, 1864, is not *prima facie* subject to be discharged by a payment in Confederate treasury notes. In such a note the word dollars means dollars in lawful money of the United States.

2. *Error without injury; what no ground for reversal.*—A charge of the court which is more favorable to the defendant objecting to it than the testimony justifies, is, at most, but error without injury, and is not a ground for reversal.

3. *Same; party complaining must show error.*—When a charge is of such doubtful meaning as to leave it uncertain whether it would produce a correct result or not, the party objecting to it, must show that he would be injured by it. Any process that will reach a correct result is sufficient.

APPEAL from Circuit Court of Dale.
Tried before Hon. J. McCALEB WILEY.

The facts are stated in the opinion.

J. L. PUGH, and SEALS & WOOD, for appellant.
W. C. OATES, *contra.*

PETERS, J.—This is an action of debt commenced on the twenty-fourth of September, 1866, in the circuit court of Dale county, and tried at the fall term, in the year 1870, of said circuit court. The cause of action was a promissory note, which was in the following words, to-wit:

"$2175 90-100.          ABBEVILLE, ALA., Oct. 31, 1863.

On or before the first day of January next, I promise to pay Charles J. Reynolds, or bearer, the sum of two thousand one hundred and seventy-five 90-100 dollars, for value received."          JAMES WILCOXEN."

The appellee, Reynolds, obtained a judgment in the

court below, on the verdict of a jury for the sum of three thousand four hundred and thirty-six 84-100 dollars, and costs.   From this judgment Wilcoxen appeals to this court.

There was a bill of exceptions taken by the defendant on the trial in the court below, from which it appears that the said defendant set up in defense to said action, that said promissory note was understood and agreed to be paid in Confederate treasury notes of the late "Confederate States of America," so-called.   But the only evidence offered by the defendant in the court below, in support of this defense, was, that the note was given for the purchase-money, in part, of a tract of land; that the price given for the land was much above its real value; that the trade for the land was consummated in the State during the late rebellion, when the currency of the country was said Confederate treasury notes, and that the maker of the note understood that this currency would be the medium of payment, and that about fifteen hundred dollars of the purchase-money, for said land, was paid down on the consummation of the trade, for said land, in said Confederate currency, called "Confederate treasury notes."   The whole price of the said land was seven thousand dollars, which was paid in notes and judgments, and said sum of fifteen hundred dollars in Confederate treasury notes, except the amount of the note sued on.   This was the substance of the proof on the part of the defendant in the court below. On the part of the plaintiff, it was shown that the plaintiff did not agree to receive payment of said note in Confederate money, but only in lawful money; that nothing was said at the time the trade was agreed upon or consummated, or when the note was executed and delivered about its payment in Confederate money, or in any other kind of money, except what is mentioned in the note itself, and that the land was not sold for a price above its value, when it was considered how the price was to be paid, to-wit, in promissory notes and judgments on third persons, in the Confederate money paid down, and the balance mentioned in the note in controversy.   The plaintiff, who was a wit-

ness for himself, testified that the note was not to be paid
in Confederate money ; that he did not want Confederate
money, and would not have taken a wagon load of it for
his land sold to the defendant, Wilcoxen.   Upon this evi-
dence the court, without being required to do so by one of
the parties, gave the following charge in writing, to the
jury :

"This is an action, gentlemen of the jury, brought by
the plaintiff against the defendant on a promissory note.
When the plaintiff read in evidence the note sued on and
closed, this would entitle him to recover the whole amount
of the note and interest thereon to date, unless the defend-
ant, on his part, by proof, shows that the plaintiff ought
not to recover, or if recover, not as much as claimed by
the plaintiff.   The defendant pleads that it was understood
between him and the plaintiff that the note sued on was
to be paid in Confederate treasury notes.   Well, gentle-
men, the law is that the defendant must satisfy you that
this plea is true.   The *onus* is on him to prove his plea.
And before this plea can avail him, he must satisfy you
that not only he so understood it, but that the plaintiff
also understood it in that way.   Whether or not this un-
derstanding, as set up in the plea, was had between the
parties is a question for you, gentlemen, and you must de-
cide it from the evidence in the case.   If you shall believe
that it was understood or agreed between the plaintiff and
defendant, that said note was to be discharged by a
payment in Confederate treasury notes, the defendant will
be entitled to scale the notes under the ordinance of the
convention of 1865, in this State.   And in ascertaining
how much to scale it, you will find out from the proof what
was the real and true value of the land purchased by the
defendant from the plaintiff, in good money, and then find
a sum which shall bear the same proportion to the real
value of the land as the note sued on bears to the nominal
amount agreed to be paid for the land purchased, and this
sum, so found, with interest from the date of said note,
will be the amount of plaintiff's recovery.   If you find for
the plaintiff, you will say by your verdict, " We, the jury,

find for the plaintiff, and assess his damages" at so much. If you find for the defendant, you will simply say, "We, the jury, find for the defendant." To this charge the defendant excepted. It is now contended by the learned counsel for the appellant that this charge is erroneous, because the rule laid down therein by which the jury were to ascertain what amount the plaintiff is legally, justly and equitably entitled to receive on said note, provided the jury should believe, from the evidence, that said note was to be discharged by a payment in Confederate currency or treasury notes, under ordinance No. 26 of the convention of September 12, 1865, was different from that laid down in *Herbert & Gessler v. Easton,* 43 Ala. 547.

This charge is really more favorable to the defendant in the court below, who is the appellant here, than he was entitled to. There was no evidence in the court below which tended to show that the promissory note mentioned in the complaint was to be discharged by a payment in Confederate currency or treasury notes. The testimony of the defendant and the plaintiff in the court below clearly shows this. The currency referred to and named in the note is " dollars." This word expresses a certain value in the currency of the United States. In the singular, it means one hundred cents of the legal currency of the nation. This is its *prima facie* meaning when used in an obligation to pay a sum of money. It is, however, capable of being used in a broader and less technical sense. When this latter is the case, its meaning, even in a written contract, may be explained by parol so as to show the real intention of the parties ; because it is the intention of the parties that makes the contract.—1 Pars. Cont. 475. But if this intention is different from that expressed in the written instrument, it can not be allowed to avail, unless it appears that all the parties to the contract concurred in it when the contract was entered into. The evidence in this case does not show this, nor tend to show it. There was no evidence, then, on which this charge could be based. The defendant was not injured by it. It was too favorable to him. The mere fact that a promissory note, made in

this State on the 31st day of October, 1863, and payable in this State on the 1st day of January, 1864, without more, is not *prima facie* evidence that such note was agreed and understood by the parties to be discharged by a payment in Confederate treasury notes, when there is no expression in the note which indicates this intention.

The charge of the court above quoted is certainly not free from considerable obscurity. And, if properly understood, it may not violate the rule laid down in the case of *Herbert & Gessler v. Easton*, 43 Ala. 547. And if it does not, it is not erroneous. It does not necessarily follow that the same result may not be reached by more than one process. A party complaining of error must show that it exists, and that he has been injured by it, else it will not be grounds for reversal.—Shep. Dig. p. 5u8, § 82.

The judgment of the court below is affirmed.